# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2024-CA-01000-COA

**PATRIOT INSPECTS, LLC**                                    **APPELLANT**

**v.**

**KATHRYN McKENZIE**                                         **APPELLEE**

DATE OF JUDGMENT:               07/31/2024
TRIAL JUDGE:                    HON. BURNICE WESLEY CURRY IV
COURT FROM WHICH APPEALED:      FORREST COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:         PAUL DARREN PALERMO
ATTORNEYS FOR APPELLEE:         PAUL MANION ANDERSON
                                ETHAN GARRETT ZADROZNY
NATURE OF THE CASE:             CIVIL - CONTRACT
DISPOSITION:                    AFFIRMED - 05/26/2026
MOTION FOR REHEARING FILED:

**EN BANC.**

**WEDDLE, J., FOR THE COURT:**

¶1.     Kathryn McKenzie filed a complaint in the Forrest County Circuit Court against Patriot Inspects LLC (Patriot) and multiple other defendants. McKenzie asserted claims of negligence, gross negligence, negligent infliction of emotional distress, and intentional infliction of emotional distress against Patriot arising from a pre-purchase inspection that Patriot's owner and home inspector, Patrick Sorrells, performed. Patriot moved to compel arbitration of McKenzie's claims pursuant to the parties' inspection agreement and dismiss the complaint or, alternatively, to stay all the proceedings. The circuit court found that certain provisions within the inspection agreement were substantively unconscionable and conflicted with Mississippi statutory law. Concluding that the inspection agreement's

clauses were unenforceable, the circuit court denied Patriot's motion.

¶2.     Upon review, we agree with the circuit court that the inspection agreement's limitation of liability provision and one-year limitations period were substantively unconscionable. We further agree that the limitation of liability clause was so intertwined with the arbitration clause so as to affect the application of the arbitration clause and render it unconscionable as well. We therefore affirm the circuit court's order finding the inspection agreement as a whole unenforceable and denying Patriot's motion.

## FACTS

¶3.     In early 2022, McKenzie, a graduate student at the University of Southern Mississippi, sought to purchase an affordable, move-in-ready home that would not require substantial repairs. After entering into a contract with Trusted Homes LLC (Trusted Homes) and Bach Stabile to purchase a home in Hattiesburg, Mississippi, McKenzie hired Patriot to perform a pre-purchase home inspection. Patriot offered McKenzie two options for its services. For $300, McKenzie could obtain a routine home inspection. For a minimum fee of $2,500, McKenzie could receive a comprehensive inspection that included having a contractor, engineer, and architect review the property. McKenzie chose the $300 inspection option.

¶4.     Patriot's home inspection agreement that McKenzie signed contained a provision discussing the resolution of disputes. The dispute resolution section provided that any claims arising from the inspector's negligence or failure to perform his duties that were within the jurisdictional limit of small claims court or justice court were to be resolved in the appropriate court. Any claims that exceeded the limit of small claims court or justice court

2

were to be resolved by binding arbitration. In addition, if any claim proceeded to arbitration, each party was to bear its own arbitration costs.

¶5.     The inspection agreement also contained a limitation of liability clause. The clause limited Patriot's liability to twice the amount paid for the home inspection. As stated, McKenzie chose the $300 home inspection. As a result, under the terms of the agreement, any damages claims McKenzie might later raise against Patriot were limited to $600. The agreement provided that if a client chose the more expensive comprehensive inspection option starting at $2,500, then no "limitation of liability [was] available." The inspection agreement further provided that McKenzie had one year to assert against Patriot any claims related to the home inspection.

¶6.     McKenzie signed the home inspection agreement with Patriot on May 22, 2022. The following day, on May 23, 2022, Sorrells conducted the inspection on McKenzie's prospective home and issued a written report detailing his findings. Sorrells's report indicated that he found no material defects present at the home. Relying on Sorrells's inspection report and believing the home to be free of material defects, McKenzie proceeded with the purchase. After moving into her home, McKenzie alleged that she discovered significant water leaks in the roof and plumbing defects that had not been disclosed in Sorrells's home inspection report. On April 11, 2023, Jason Rivers of Jason Rivers Consulting LLC conducted a second home inspection and prepared a report identifying multiple material defects allegedly missed by Sorrells during the initial home inspection.

¶7.     On August 9, 2023, McKenzie filed a complaint in circuit court against Patriot,

Trusted Homes, Stabile, and John Does 1-5. McKenzie asserted claims of negligence and gross negligence against Patriot and claims of negligent and intentional infliction of emotional distress against all the defendants. Specifically with regard to Patriot, McKenzie alleged that Sorrells had negligently failed to identify and report numerous material defects with the home and that under industry standards, these defects should have been discovered. According to McKenzie, the undisclosed material defects included significant roof deficiencies, such as missing and improperly installed roofing materials and flashing; missing gutters and disconnected downspouts; water intrusion into the crawlspace; rotten support beams; leaning block piers; the absence of insulation in the crawlspace; electrical safety issues; improperly functioning doors and windows; widespread moisture damage to the ceilings, walls, and floors; spongy flooring; mold; foundation and structural damage; countertop damage; and termite damage.

¶8.     McKenzie asserted that the leaks in the home caused widespread additional damage and mold growth, which aggravated her allergies and caused bodily injury, emotional distress, and substantial repair costs. McKenzie stated that she retained contractors, engineers, and other experts to assess the damage. The estimates McKenzie received for repairing the defects included $4,011.46 for water extraction and temporary remediation; $12,698 for roof repairs; and $125,010.60 for more extensive structural and property repairs, including roofing, siding, rotting areas to reframe, foundation and subfloor replacement, joists, and floors.

¶9.     On November 27, 2023, Patriot answered the complaint. In addition, Patriot moved

4

to compel arbitration and dismiss the complaint or, alternatively, to stay all the proceedings. The circuit court held a hearing on Patriot's motion on July 17, 2024.

¶10.    In its written order entered on July 31, 2024, the circuit court noted that the inspection agreement's limitation of liability clause capped McKenzie's damages at $600 and precluded consequential, incidental, and punitive damages, as well as attorney's fees.  In addition, the circuit court noted that the agreement's dispute resolution provision required arbitration for claims that exceeded $3,500.  *See* Miss. Code Ann. § 9-11-9 (Rev. 2019) (providing that any claim for damages in justice court shall not exceed $3,500).  Because Patriot's $300 home inspection fee fell well below the jurisdictional amount for justice court, the circuit court concluded that the provision granted Patriot full access to the court system for its damages claims.  At the same time, the circuit court found that clients like McKenzie, who likely would have damages claims that exceeded $3,500, would effectively be denied the ability to similarly access the court system.  As a result, the circuit court concluded that the agreement's provisions effectively prevented McKenzie from obtaining "full legal redress" for any claims or damages.  Moreover, the circuit court found that the inspection agreement's one-year contractual limitations period directly conflicted with Mississippi's three-year statute of limitations under Mississippi Code Annotated section 15-1-49 (Rev. 2019).

¶11.    Given the cumulative effect of the agreement's various provisions, and relying on relevant Mississippi Supreme Court precedent, the circuit court concluded that the clauses Patriot sought to enforce were substantively unconscionable and therefore unenforceable. As a result, the circuit court denied Patriot's motion to compel arbitration and dismiss the

5

complaint or, alternatively, to stay all the proceedings. Aggrieved, Patriot appeals.

## DISCUSSION

¶12. On appeal, Patriot challenges the circuit court's determination that the clauses Patriot sought to enforce from the parties' inspection agreement were substantively unconscionable and therefore unenforceable. Patriot contends that the clauses were valid and enforceable and that the circuit court should have granted its motion to compel the arbitration of McKenzie's claims.

¶13. "Appellate courts apply a de novo standard of review to a trial court's decision to grant or deny a motion to compel arbitration." *Brown v. Petro*, 424 So. 3d 380, 385-86 (¶11) (Miss. Ct. App. 2025) (quoting *Diversicare of Meridian LLC v. Shelton*, 334 So. 3d 487, 492-93 (¶15) (Miss. Ct. App. 2022)). "[T]he burden of establishing the existence of an arbitration agreement, in line with the burden of establishing the existence of a contract, rests on the party seeking to invoke it." *Id.* at 386 (¶14) (quoting *Diversicare*, 334 So. 3d at 493 (¶18)). In determining the enforceability of an arbitration clause, we examine the following: "whether the parties have agreed to arbitrate the dispute, and . . . whether state law contract defenses such as fraud, duress, or unconscionability may invalidate the agreement or foreclose arbitration." *Id.* at (¶15).

¶14. "Unconscionability is the absence of meaningful choice on the part of one of the parties, together with contract terms that are unreasonably favorable to the other party." *Gray v. Town of Terry*, 196 So. 3d 211, 217 (¶20) (Miss. Ct. App. 2016) (citation and internal quotation mark omitted). "[S]ubstantive unconscionability focuses on the fairness of [an]

6

agreement's terms." *Sanderson v. Sanderson*, 245 So. 3d 421, 427 (¶22) (Miss. 2018). "A contract is substantively unconscionable when 'there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach.'" *Gray*, 196 So. 3d at 217 (¶20) (quoting *Caplin Enters. v. Arrington*, 145 So. 3d 608, 614 (¶14) (Miss. 2014)).

¶15. Here, the circuit court relied on *Pitts v. Watkins*, 905 So. 2d 553 (Miss. 2005), in finding that the clauses contained within the parties' inspection agreement were substantively unconscionable and therefore unenforceable. In *Pitts*, Michael and Stephanie Pitts hired Charles Watkins to perform a home inspection to evaluate the condition of the property they were interested in purchasing. *Id.* at 554 (¶2). Subsequently, the Pittses sued Watkins for "breach of duty, misrepresentation, breach of contract, gross negligence[,] and negligence . . . ." *Id.* at (¶1). Watkins moved for summary judgment and argued that under the parties' inspection agreement, the Pittses' claims should be resolved through arbitration. *Id.* Watkins further argued that the agreement's limitation of liability clause prevented the Pittses from recovering any damages exceeding the $265 inspection fee they paid him. *Id.* After the circuit court granted summary judgment in favor of Watkins, the Pittses appealed. *Id.* at 555 (¶5).

¶16. Upon review, the Mississippi Supreme Court held that the home inspection agreement's clauses on arbitration and limitation of liability were substantively unconscionable. *Id.* at (¶8). While the arbitration clause provided Watkins with the ability to pursue any of his potential claims against the Pittses in court, the Pittses were required to

arbitrate their potential claims against Watkins. *Id.* at 555-56 (¶10). The supreme court noted that the terms of the arbitration clause "unreasonably favor[ed] Watkins" and were "clearly one-sided, oppressive, and therefore, substantively unconscionable." *Id.* at 556 (¶10).

¶17.    Next the supreme court examined the agreement's limitation of liability clause and held it was also substantively unconscionable. *Id.* at 556 (¶¶11, 13). The Pittses had alleged that Watkins's negligence caused them to incur over $30,000 in expenses. *Id.* at (¶12). However, "[t]he limitation of liability clause limit[ed] Watkins's liability for any wrongdoing [to] $265 (the amount paid for the inspection)" and stated that the Pittses released Watkins "from any and all additional liability." *Id.* at (¶13). The supreme court found that "[l]imiting homeowners to a recovery of the inspection fee and not allowing the recovery of reasonably foreseeable compensatory damages [was] clearly unconscionable, [did] not provide a meaningful choice to homeowners, and [was] unreasonably favorable to the home inspector." *Id.* at 557 (¶14).

¶18.    Moreover, the supreme court concluded that when working in conjunction with one another, the limitation of liability clause and the arbitration clause "effectively denie[d] the [Pittses] of an adequate remedy" and provided "further evidence of substantive unconscionability." *Id.* at (¶15). The supreme court explained:

> The Pittses filed affidavits that the inspection failed to discern $30,000 to $40,000 in damages. The limitation of liability clause which limits the Pittses' recovery to $265, in conjunction with an undisclosed arbitration provision . . . which would require an initial filing fee of at least $500, would effectively deny the plaintiffs any redress. The deprivation of an adequate remedy resulting from the interaction of these two clauses renders both clauses

8

substantially unconscionable.

*Id.* at 557-58 (¶16).

¶19.    Finally, the supreme court noted that the inspection agreement contained a one-year limitations period, which conflicted with the three-year period provided by Mississippi statutory law. *Id.* at 558 (¶17). The supreme court stated that the statutory period of three years could "not be changed by contract," and therefore any attempt to change "the limitations period [was] null and void." *Id.* The *Pitts* court found that "[t]he attempt to create a private statute of limitations [was] further evidence of overreaching by Watkins, [was] oppressive, violate[d] statutory law[,] and [was] likewise unconscionable." *Id.*

¶20.    Based on its findings that the clauses contained within the parties' inspection agreement were (both individually and collectively) substantively unconscionable and therefore unenforceable, the *Pitts* court reversed the circuit court's grant of summary judgment in favor of Watkins. *Id.* at (¶20). The supreme court remanded the case to the circuit court for further proceedings. *Id.*

¶21.    Here, Patriot concedes that the one-year limitations period contained in its agreement conflicts with the applicable three-year period provided by statute. Even so, Patriot maintains that several key differences exist between its agreement with McKenzie and the one at issue in *Pitts*. For example, under Patriot's agreement, McKenzie had the option to choose a more expensive comprehensive inspection, which would have granted her greater access to the court system for any claims she later asserted. Patriot contends that the availability of this more expensive option provided McKenzie with a meaningful choice and

9

prevented the agreement from being substantively unconscionable. In addition, Patriot argues that unlike the arbitration clause discussed in *Pitts*, its own arbitration clause applied equally to both parties if their claims amounted to more than the $3,500 jurisdictional limit for justice court. As a result, Patriot asserts that the circuit court erred by failing to enforce the arbitration clause.

¶22. Although we acknowledge that Patriot's agreement with McKenzie was not identical to the one declared unconscionable in *Pitts*, we conclude after careful review that too many similarities exist to reverse the circuit court's order finding the agreement to be unenforceable. In addition, we concur with the circuit court's determination that the arbitration clause was so intertwined with the agreement's unconscionable provisions so as to likewise render the arbitration clause unenforceable.

¶23. Sorrells was a licensed Mississippi home inspector required to adhere to certain standards in performing his duties. As such, even in choosing the less expensive $300 inspection option, McKenzie was entitled to rely on Sorrells's reported findings and conclusions. As the supreme court recognized in *Pitts*, "[a]fter an inspection, the purchaser makes a decision involving thousands of dollars—whether to buy the house or not—and that decision is largely based upon a satisfactory inspection report." *Pitts*, 905 So. 2d at 556 (¶11). Without any indication in the inspection report that a home might have material defects present, a client such as McKenzie has no way to know that she might need to hire additional experts to examine the property prior to purchase.

¶24. Despite McKenzie's evidence showing that the repairs to her home will likely cost

over $140,000, the agreement with Patriot limited her damages claims to $600 and required her to pursue any amount over $3,500 in arbitration. As the circuit court noted, clients like McKenzie who seek damages after an alleged negligent home inspection will often have claims amounting to more than $3,500 and will therefore almost always be required under the agreement to pursue arbitration. By contrast, any attempts by Patriot to seek the payment of its $300 inspection fee (if not already secured prior to performing the home inspection) will fall within the jurisdictional limit allowed by justice court. As such, the agreement simultaneously limited Patriot's liability, provided Patriot with an avenue for court redress of its claims, and required clients such as McKenzie to arbitrate their claims.

¶25. We find that the outcome produced by the limitation of liability clause working in conjunction with the arbitration clause resulted in a significant disparity between the parties. This disparity both unreasonably favored Patriot and deprived McKenzie of an effective remedy for any failure by Patriot to adequately perform its duties. As such, we affirm the circuit court's finding that the agreement was substantively unconscionable and that the limitation of liability clause and the arbitration clause were so intertwined so as to prevent enforcement of the arbitration clause alone. We also note that, as in *Pitts*, the one-year limitations period contained in Patriot's agreement not only violated the relevant three-year statute of limitations but also provided further evidence of substantive unconscionability. *Pitts*, 905 So. 2d at 558 (¶17). For these reasons, we affirm the circuit court's order finding Patriot's agreement unenforceable and denying the motion to compel arbitration.

**CONCLUSION**

11

¶26. Because we find the clauses contained within Patriot's inspection agreement were substantively unconscionable and therefore unenforceable, we affirm the circuit court's order denying Patriot's motion to compel arbitration and dismiss the complaint or to stay all the proceedings.

¶27. **AFFIRMED.**

**WESTBROOKS, McDONALD, LAWRENCE, McCARTY AND LASSITTER ST. PÉ, JJ., CONCUR. WILSON, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION, JOINED BY BARNES, C.J., CARLTON P.J., AND EMFINGER, J.**

**WILSON, P.J., DISSENTING:**

¶28. The United States Supreme Court has held that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, establishes a federal "rule of severability" that consists of "three propositions." *Buckeye Check Cashing Inc. v. Cardegna*, 546 U.S. 440, 445-47 (2006). "First, as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Id.* at 445. "Second, unless [a party's] challenge is to *the arbitration clause itself*, the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445-46 (emphasis added). "Thus, *a party's challenge to another provision of the contract*, or to the contract as a whole, *does not prevent a court from enforcing a specific agreement to arbitrate*." *Rent-A-Ctr., W. Inc. v. Jackson*, 561 U.S. 63, 70 (2010) (emphasis added). "Third, this arbitration law applies in state as well as federal courts." *Buckeye*, 546 U.S. at 446.

¶29. Therefore, as a matter of federal law, McKenzie's challenges to the limitation of liability and limitations period in the parties' contract must be "considered by the arbitrator

12

in the first instance." *Id.* at 445-46. The limitation of liability and the contractual limitations period are not part of the "arbitration clause itself." *Id.* Rather, each is a separate provision of the parties' contract and operates independently of the arbitration clause.[1] Under federal law, this sort of "challenge to another provision of the contract" is not a ground for refusing to enforce the parties' arbitration agreement. *Rent-A-Ctr.*, 561 U.S. at 70.

¶30.    Here, "the arbitration clause itself" is unexceptional and hardly unconscionable. The arbitration agreement simply states:

### RESOLUTION OF DISPUTES

Any controversy or claim arising out of or relating to this Agreement shall be resolved through **Small Claims Court** (or similar court of limited monetary jurisdiction) in the jurisdiction applicable to this Agreement. In the event that the amount in dispute exceeds the jurisdiction of the applicable Small Claims Court, the dispute shall be settled by **binding arbitration** administered by Construction Dispute Resolution Services, or if unavailable, Resolute Systems, before a single arbitrator using its Commercial Arbitration Rules. The arbitrator shall have at least three years of knowledge and experience in the home inspection industry or similar knowledge and experience in construction. Each party agrees to pay its own costs of arbitration.

Any legal action or proceeding shall be brought in the County in which the Property is located.

Although McKenzie attacks the requirement that claims be resolved in small claims court (justice court) if they are within that court's jurisdictional limit, the provision applies equally to both parties, and McKenzie cites no authority holding that a right to proceed in small claims court renders an arbitration clause invalid. McKenzie does not argue that any other

---

[1] The parties' agreement also includes a separate severability clause that states that "[a]ny provision of this Agreement which proves to be invalid, void, or illegal shall in no way affect, impair, or invalidate any other provision of this Agreement, and all such other provisions shall remain in full force and effect."

13

provision of the parties' arbitration clause is unconscionable, and the FAA would preempt any argument that an arbitration agreement is unconscionable just because it requires arbitration. *Doctor's Assocs. Inc. v. Casarotto*, 517 U.S. 681, 687 n.3 (1996).

¶31. Because the parties have a valid agreement to arbitrate, the FAA requires us to enforce it. McKenzie may raise her challenges to other provisions of the contract in arbitration. If the contractual limitations period is at issue, the arbitrator should find that it is invalid and refuse to enforce it.[2] The arbitrator should also refuse to enforce the limitation of liability if it is "unconscionable" under Mississippi law.[3] However, as a matter of federal law, those

---

[2] *See* Miss. Code Ann. § 15-1-5 (Rev. 2019) ("The limitations prescribed in this chapter shall not be changed in any way whatsoever by contract between parties, and any change in such limitations made by any contracts stipulation whatsoever shall be absolutely null and void . . . ."); *Ace Am. Ins. Co. v. Hetsco Inc.*, 393 So. 3d 1015, 1030 (¶¶60-61) (Miss. 2024).

[3] The limitation of liability provision here applies to ordinary "negligence" claims but "shall not apply to any damages specifically allowed by statute" or "to any damages caused by the gross negligence of the inspector." The provision also states: "At the Client's option, a **comprehensive inspection** without limitation of liability is available. A **comprehensive inspection** includes a contractor, engineer, and architect reviewing the property for a minimum fee of $2,500." The Mississippi Supreme Court recently stated:

> The doctrine of unconscionability applies only to the most egregious of contractual situations. An unconscionable contract is one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other. An unconscionable contract affronts the sense of decency. . . . The terms of a substantively unconscionable contract are so unreasonably favorable to one party that the contract imposes oppressive terms on the weaker party.

*LAGB LLC v. Total Merch. Servs. Inc.*, 284 So. 3d 720, 727 (¶17) (Miss. 2019) (citations, quotation marks, and ellipsis omitted). The Court has also "defined" "[u]nconscionability . . . as *an absence of meaningful choice on the part of one of the parties*, together with contract terms which are unreasonably favorable to the other party." *Pitts v. Watkins*, 905 So. 2d 553, 558 (¶19) (Miss. 2005) (emphasis added) (quotation marks omitted).

14

issues must be decided by the arbitrator and are not a basis for refusing to enforce the parties'

valid agreement to arbitrate.  Accordingly, I respectfully dissent.

**BARNES, C.J., CARLTON, P.J., AND EMFINGER, JJ., JOIN THIS OPINION.**